UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMERO MOSES #231885
WILLIAM JOHNSON #235820
LAMONT HEARD #252329,

      Plaintiffs,                                   Hon. Paul L. Maloney

v.                                                     Case No. 1:16-cv-248

THOMAS FINCO, et al.,

      Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>. (ECF No. 99). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted** and this matter **terminated**.

## BACKGROUND

This action was initiated by ten (10) prisoners against the following Michigan Department of Corrections (MDOC) employees: (1) Thomas Finco, MDOC Deputy Director; (2) David Leach, Special Activities Coordinator; and (3) Michael Martin, Dietician. (ECF No. 8). Seven (7) of the plaintiffs were subsequently dismissed from this action. The three remaining plaintiffs are: (1) Jamero Moses; (2) William Johnson; and (3) Lamont Heard. (ECF No. 40). Plaintiffs Moses, Johnson, and Heard allege that they have been approved to participate in the MDOC's religious vegan diet, but that such does not meet their religious needs. Plaintiffs assert that Defendants denied their requests to receive a special alternative menu. Plaintiffs also assert that Defendants denied their requests to receive certain religious literature.

At this juncture, the only claims remaining in this matter are the following: (1) Plaintiff Heard's claim that Defendant Finco improperly prevented Plaintiff from possessing the texts: (a) How to Eat to Live, vol. I & II and (b) Our Savior has Arrived; (2) Plaintiff Heard's claim that Defendant Finco denied his request to participate in "an alternative religious menu"; (3) Plaintiff Johnson's claim that Defendant Finco improperly prevented Plaintiff from possessing the texts: (a) How to Eat to Live, vol. I & II and (b) Our Savior has Arrived; and (4) Plaintiff Moses' claim that Defendants Finco and Leach denied his requests to participate in "an alternative religious menu."  (ECF No. 60, 63, 96, and 98).   Defendants Finco and Leach now move for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."  *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).  Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial."  *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Amini*, 440 F.3d at 357.   The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient.  *Daniels v.*

*Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is

susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.        Plaintiffs' Untimely and Improper Pleadings**

As Defendants note, Plaintiffs have submitted, in response to the present motion, an improper sur-reply brief as well as an untimely response. (ECF No. 109, 111). Accordingly, Defendants argue that these pleadings should not be considered when resolving their motion. While striking the pleadings in question would be justified, the Court will instead consider such as doing so does not prejudice Defendants.

**II.       Alternative Religious Meal Claims**

As noted above, Plaintiffs Heard and Moses each claim that Defendants Finco and Leach denied their requests to participate in "an alternative religious menu." Plaintiffs allege that this conduct violated their First Amendment right to freely practice their religion as well as their rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA).

         A.       First Amendment

As the Supreme Court has observed, "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also, Turner v. Safley*, 482 U.S. 78, 84 (1987) ("[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution"). Thus, while "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates nevertheless retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987). However, "simply because prison inmates retain

certain constitutional rights does not mean that these rights are not subject to restrictions and limitations," *Wolfish*, 441 U.S. at 545, as operating a prison is a difficult task requiring "expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government."  *Turner*, 482 U.S. at 85.

Accordingly, courts have consistently held that issues involving "the adoption and execution of policies and practices that in [the] judgment [of prison officials] are needed to preserve internal order and discipline and to maintain institutional security" in most circumstances "should be accorded wide-ranging deference."  *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Wolfish*, 441 U.S. at 547); *see also*, *Bazzetta v. McGinnis*, 124 F.3d 774, 779 (6th Cir. 1997) (issues involving prison administration are properly resolved by prison officials, and the solutions at which they arrive should be accorded deference).

When reviewing an inmate's claim of constitutional violation, courts must balance this policy of judicial restraint with the need to protect inmates' constitutional rights.  *See Turner*, 482 U.S. at 85.  The standard by which this balancing occurs was articulated by the *Turner* Court, which held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  *Id.* at 89.  This standard represents a "reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights."  *Flagner*, 241 F.3d at 481 (quoting *Shabazz*, 482 U.S. at 349). The *Turner* Court identified four factors that are relevant in determining the reasonableness of a challenged prison regulation:

    1.    there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

> 2. whether there are alternative means of exercising the right that remain open to prison inmates;
>
> 3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and
>
> 4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Turner*, 482 U.S. at 89-91.

Failure to satisfy the first factor renders the regulation unconstitutional, without regard to the remaining three factors. If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the actions at issue are reasonably related to a legitimate penological interest. It should further be noted that the *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policy at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484.

With respect to which party bears the burden concerning the *Turner* analysis, the Supreme Court has held that "[t]he burden. . .is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). This statement clearly places on the prisoner the burden as to the last three *Turner* factors, but says nothing as to which party bears the burden as to the initial factor. As subsequent courts have concluded, the burden to articulate the rationale for a challenged action must rest with prison officials. As the Sixth Circuit observed:

> We note that while the burden is on the prisoner to disprove the validity of the regulation at issue. . .Defendants must still articulate their interest in the regulation. . .Otherwise, a prisoner would be forced to hypothesize any number of potential legitimate penological interests and then disprove a reasonable relationship between each and the regulation at issue.

*Figel v. Overton*, 121 Fed. Appx. 642, 646 n.2 (6th Cir., Feb. 4, 2005) (internal citations omitted); *see also*, *Sharp v. Johnson*, 669 F.3d 144, 156 (3d Cir. 2012) ("the prison has the burden of demonstrating the First *Turner* Factor").  The Court concludes, therefore, that with respect to the *Turner* factors, Defendants bear the initial burden to articulate a valid, rational connection between the challenged action and the legitimate governmental interest which motivated such.  This burden is "slight, and in certain instances, the connection may be a matter of common sense."  *Johnson*, 669 F.3d at 156.

As previously noted, Plaintiffs were permitted to participate in the MDOC's religious vegan diet.  Plaintiffs were not content with this accommodation, however.  Asserting that the vegan diet did not meet their religious needs, Plaintiffs requested to receive a special, individualized diet tailored to their specific religious demands.  Plaintiffs' requests were denied because it was determined that Plaintiffs were both purchasing, possessing, and/or eating foods which are expressly contrary to the individualized diet Plaintiffs were requesting.  (ECF No. 100-2 at PageID.851-57; ECF No. 100-7 at PageID.871-85).  Plaintiffs do not dispute that they purchased and possessed foods in direct conflict with the special dietary accommodation they are requesting.  (ECF No. 103-1 at PageID.955; ECF No. 108-3 at PageID.1003-05; ECF No. 111-1 at PageID.1034-37).  Plaintiffs nevertheless argue that because they allegedly did not consume the food items in question, Defendants' motion should be denied.  The Court disagrees.

It is well recognized that prison officials possess a legitimate penological interest in controlling the cost of specialized religious diets and ensuring that only those with sincere beliefs participate in such. *See Berryman v. Granholm*, 343 Fed. Appx. 1, 6 (6th Cir., Aug. 12, 2009); *Green v. Tudor*, 685 F.Supp.2d 678, 697 (W.D. Mich. 2010). Prison officials likewise possess a legitimate penological interest in maintaining security and discipline within the prison. *See Berryman*, 343 Fed. Appx. at 6; *Green*, 685 F.Supp.2d at 697. These legitimate interests are implicated not only when a prisoner requesting a special religious diet *consumes* food inconsistent with such diet, but also when a prisoner merely *possesses* food items which are contrary to his requested religious diet. *See, e.g., Russell v. Wilkinson*, 79 Fed. Appx. 175, 176-77 (6th Cir., Oct. 24, 2003) (prisoner's rights not violated when he was denied kosher meals after found possessing non-kosher food items). Defendants, therefore, have established that there exists a valid, rational connection between their decision to deny Plaintiffs' special dietary request and the legitimate governmental interest which motivated such.

With respect to the remaining *Turner* factors, such do not weigh in Plaintiffs' favor. Defendants assert that Plaintiffs can simply select food items that meet their professed religious needs. Plaintiffs have failed to present evidence that such alternative methods of exercising their rights do not exist or are otherwise insufficient. Plaintiff Moses has also testified that he can purchase or otherwise obtain food items that satisfy his religious needs. (ECF No. 108-3 at PageID.1003-05). Plaintiff Heard has presented no evidence that he is unable to do the same. Defendants further assert that "allowing a prisoner to have a religious meal when he openly flaunts restrictions imposed on other same-faith prisoners could provoke resentment amongst other prisoners who are adhering to the tenets." The Court agrees and Plaintiffs have presented no evidence undermining the validity or impact of this common-sense observation. Accordingly, the undersigned recommends that

Defendants' motion for summary judgment be granted as to Plaintiff Heard's and Plaintiff Moses' remaining First Amendment religious diet claims.

### B. RLUIPA

In relevant part, RLUIPA prohibits the government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest.  42 U.S.C. § 2000cc-1(a).  RLUIPA does not define the phrase "substantial burden."  While the Supreme Court has not defined the phrase "substantial burden," it has observed that forcing a prisoner to choose between punishment and violating his religious beliefs constitutes a substantial burden.  *See Holt v. Hobbs*, 135 S.Ct. 853, 862 (2015).  Lower federal courts have determined that an action constitutes a substantial burden when it "force[s] an individual to choose between 'following the precepts of her religion and forfeiting benefits' or when the action in question placed 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'"  *Shabazz v. Schofield*, 2016 WL 4126649 at *7 (W.D. Tenn., Aug. 2, 2016) (citations omitted); *see also*, *Incumaa v. Stirling*, 791 F.3d 517, 525 (4th Cir. 2015) (same).

On the other hand, action which merely "encumbered the practice of religion, [but] did not pressure the individual to violate his or her religious beliefs" does not constitute a substantial burden.  *Shabazz*, 2016 WL 4126649 at *7; *see also*, *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise); *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003) (RLUIPA was not intended to create a cause of action in response

to every decision which serves to inhibit or constrain religious exercise, as such would render meaningless the word "substantial").

Each Plaintiff bears the initial burden to establish that his ability to exercise his religion has been substantially burdened.  *See Ali v. Quarterman*, 434 Fed. Appx. 322, 325 (5th Cir., July 18, 2011); *Hall v. Martin*, 2012 WL 1579334 at *7 (W.D. Mich., Mar. 29, 2012).   If Plaintiff makes the requisite showing, the burden shifts to Defendants to demonstrate that their action constituted the least restrictive means of furthering a compelling governmental interest.  *See Ali*, 434 Fed. Appx. at 325; *Hall*, 2012 WL 1579334 at *7.

It is important to note that Plaintiffs have not alleged that they are being denied a religious dietary accommodation.   Instead, Plaintiffs initiated the present action because they are not being provided the particular dietary accommodation of their choosing.   This circumstance does not impose a substantial burden.  *See, e.g., Johnson v. Pritchard*, 2015 WL 6455328 at *3 (M.D. Tenn., Oct. 26, 2015) (while RLUIPA may require that Muslim prisoners receive a religious dietary accommodation, it does not require that such meals contain the specific menu items desired by the prisoner); *Robinson v. Jackson*, 615 Fed. Appx. 310, 313 (6th Cir., June 15, 2015) (vegetarian meals constitute an appropriate and sufficient religious dietary accommodation).

Moreover, even if the Court assumes that Plaintiffs could establish that they suffered a substantial burden, Defendants would still be entitled to summary judgment because the decision by the MDOC to accommodate the religious dietary needs of thousands of prisoners by providing a vegan menu option satisfies RLUIPA.  *See, e.g., Davis v. Heyns*, 2017 WL 8231366 at *3 (6th Cir., Oct. 16, 2017) (providing Muslim prisoners with a vegan meal option satisfies RLUIPA); *McCombs v. Parker*, 2016 WL 1122677 at *2 (W.D.N.C., Mar. 22, 2016) ("prisons have a compelling and legitimate

interest in the orderly administration of a food service program that accommodates the religious dietary needs of thousands of prisoners"). Accordingly, the undersigned recommends that Defendants' motion for summary judgment be granted as to as to Plaintiff Heard's and Plaintiff Moses' remaining RLUIPA religious diet claims.

**III.        Denial of Religious Texts Claims**

Plaintiffs Heard and Johnson each claim that Defendant Finco denied their requests to possess the texts: (a) How to Eat to Live, vol. I & II and (b) Our Savior has Arrived. Plaintiffs allege that Defendant's actions violated their First Amendment right to freely practice their religion as well as their rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA).

A.    First Amendment

Pursuant to Michigan Department of Corrections Policy, prisoners are not permitted to receive publications "that may pose a threat to the security, good order, or discipline of the facility, may facilitate or encourage criminal activity, or may interfere with the rehabilitation of the prisoner." Mich. Dep't of Corr. Policy Directive 05.03.118 ¶ MM (effective September 14, 2009). Publications "advocating racial supremacy or ethnic purity or attacking a racial or ethnic group, which is reasonably likely to promote or cause violence or group disruption in the facility" fall within this definition and are, therefore, prohibited. *See* Mich. Dep't of Corr. Policy Directive 05.03.118 ¶ MM(6).

In his affidavit, Defendant Finco asserts that How to Eat to Live and Our Savior has Arrived were found to be in violation of this policy and, therefore, placed on the Restricted List in 2005 and 2000, respectively. (ECF No. 105-1 at PageID.963). Finco further asserts that both publications were placed on the Restricted List because they "advocate racial supremacy which is reasonably likely to promote or cause violence or group disruption in a correctional setting." (ECF

-11-

No. 105-1 at PageID.964). Plaintiffs have introduced no evidence to contrary or which creates any dispute of fact on this point. Defendant has established, therefore, that there exists a valid, rational connection between the decision to prohibit Plaintiffs from possessing the publications in question. Consideration of the remaining *Turner* factors do not advance Plaintiffs' position, especially in light of the overwhelming interest prison officials have in preventing racially motivated disruptions within correctional facilities. The undersigned recommends, therefore, that Defendant Finco's motion for summary judgment be granted as to Plaintiff Heard's and Plaintiff Johnson's remaining First Amendment religious publication claims.

B. RLUIPA

Plaintiffs have failed to establish that the inability to possess the two publications in question constitutes a substantial burden on their religious exercise. Furthermore, even if Plaintiffs made such a showing, Defendant is entitled to summary judgment because RLUIPA is not violated where prison officials prohibit prisoners from possessing a publication based upon legitimate penological security concerns. *See, e.g.*, *Murphy v. Lockhart*, 826 F.Supp.2d 1016, 1033-34 (E.D. Mich. 2011); *Hendrickson v. Caruso*, 2008 WL 623788 at *6 (W.D. Mich., Mar. 4, 2008). Accordingly, the undersigned recommends that Defendant Finco's motion for summary judgment be granted as to as to Plaintiff Heard's and Plaintiff Johnson's remaining RLUIPA religious publication claims.

**CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment, (ECF No. 99), be **granted** and this matter **terminated**. The

undersigned further recommends that appeal of this matter would not be taken in good faith.  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

        Respectfully submitted,

Dated: January 7, 2019         /s/ Ellen S. Carmody
        ELLEN S. CARMODY
        United States Magistrate Judge